**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Phillip D. CHAPPLE, also known as Bobby Davis, Defendant–Appellant.**

**No. 90–1544.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 14, 1990.

Decided Aug. 20, 1991.

Grant C. Johnson, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Madison, Wis., for plaintiff-appellee.

Margaret Danielson (argued), Madison, Wis., for defendant-appellant.

Before BAUER, Chief Judge, and POSNER and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Phillip Chapple was sentenced as a career criminal offender. One of the prior convictions that earned Chapple this status was possession of a firearm in violation of Illinois law. He appeals his sentence, arguing that the mere possession of a firearm does not constitute the crime of violence needed under the Sentencing Guidelines to designate him a career offender. We agree, and remand for resentencing.

## I.

Chapple was charged with one count of possession with intent to distribute cocaine and one count of use of a firearm in relation to a drug offense. He entered a guilty plea to these two counts of the indictment.

A presentence report was prepared, setting out an initial Guidelines base offense level for Chapple's conduct of 22, minus a two-level reduction for acceptance of responsibility. But the report concluded that Chapple was a career offender pursuant to § 4B1.1 because 1) he was over 18 at the time of the offense; 2) the offense was a crime of violence; and 3) he had the requisite two prior convictions for either a crime of violence or a controlled substance offense. This automatically brought the criminal history category to VI, and increased Chapple's offense level to 32 pursuant to the statutory maximum sentence under 21 U.S.C. § 841(b)(1)(C). The district judge agreed with the increased offense level and gave Chapple the two-level reduction for acceptance of responsibility, resulting in a Guidelines range of 168–210 months. Given the district court's determination that the prior Illinois offense was a crime of violence, Chapple was sentenced to 168 months on the first count, and 60 months on the second count, to be served consecutively.

In finding the two prior convictions sufficient to meet the Guidelines requirements, the district court concluded that a 1986 Illinois conviction listed in the presentence report as "felony, unlawful use of a weapon," was for a crime of violence pursuant to § 4B1.2. The Illinois statutes applicable in this context refer in the title to "use" of a weapon, but the language setting forth the elements of various offenses deals with carrying, possessing or selling dangerous weapons. See, e.g., ILL.REV.STAT. ch. 38, ¶¶ 24–1, 24–1.1. Moreover, the underlying facts of Chapple's prior conviction concern only possession—not use—of the weapon.

## II.

The district court acknowledged in sentencing Chapple that his prior "crime of violence" was not for the use but possession of a firearm. The loaded handgun was tucked into the waistband of his pants, and in the district judge's view, "[c]arrying a gun in one's belt ... has a great potential for serious injury to the public." Chapple contends that his conviction for being a felon in possession of a firearm was not a crime of violence and should not have been given that status under the Sentencing Guidelines.

Under § 4B1.2(1) of the Guidelines, a crime of violence is defined in two ways. Aside from some specifically enumerated offenses, it may either be an offense that has "as an element the use, attempted use, or threatened use of physical force against

the person of another," or it may be an offense that "involves conduct that presents a serious potential risk of physical injury to another." Because Chapple's Illinois conviction did not involve any direct or implied use of force, we, as did the district court, focus on the second part of the definition.

There is no dispute about the underlying facts—Chapple was a felon who possessed a firearm. It was tucked in the waistband of his pants but not displayed or brandished. Whether the crime of violence definition in § 4B1.2(1) applies to Chapple's prior conviction is a question of law, and in sentence review we are to give due deference to the district court's application of the Guidelines to the facts. 18 U.S.C. § 3742(e).

■ The general rule is that possession of a weapon *plus* some overt action implying or indicating its use is a crime of violence. Not surprisingly, the Third Circuit in *Williams* and this court in *McNeal* concluded that possessing a gun and firing it is a crime of violence. *United States v. Williams*, 892 F.2d 296, 304 (3d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990); *United States v. McNeal*, 900 F.2d 119, 123 (7th Cir.1990). Equally unremarkable is *United States v. Thompson*, 891 F.2d 507 (4th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990), where the Fourth Circuit found that a South Carolina conviction for pointing a gun at someone was a crime of violence. In *United States v. Alvarez*, 914 F.2d 915 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991) and *United States v. Goodman*, 914 F.2d 696 (5th Cir.1990), the respective circuits found that possession of a firearm plus some evidence of intent to fire was sufficient to be a crime of violence. There is no question that the actions of the defendants in these decisions concerned possession of a firearm plus some additional activity involving serious potential risk of physical injury to another. None of these appellate decisions dealt with mere possession of a weapon.

Two other district courts have directly addressed the issue and have concluded that the mere possession of a firearm is a crime of violence. *See United States v. Phillips*, 732 F.Supp. 255, 262–63 (D.Mass. 1990); *United States v. Johnson*, 704 F.Supp. 1398, 1399–1403 (E.D.Mich.1988); *United States v. Jones*, 651 F.Supp. 1309, 1310 (E.D.Mich.1987), *rev'd on other grounds*, 846 F.2d 358 (6th Cir.1988). The Ninth Circuit in *United States v. O'Neal*, 910 F.2d 663 (9th Cir.1990), also concluded that the offense of being a felon in possession of a weapon "by its nature poses a substantial risk that physical force will be used against the person or property." *Id.* at 667.

To the contrary, a number of courts, including our own, have stated or implied in dicta that mere possession of a firearm by a felon is not a crime of violence under the Guidelines. In *Alvarez*, 914 F.2d at 918, we noted that "[d]espite the obvious dangers of convicted felons possessing firearms, it is quite a stretch to contend that simple possession alone constitutes a crime of violence." In that case, because the conduct in question involved the use of actual force, we did not resolve the issue of mere possession. *Id.* at 918 n. 2.

The Third Circuit has also indicated that mere possession of a firearm by a felon is not a crime of violence. The court analogized to the escape example in a prior version of Application Note 1 to § 4B1.2 and stated, "possessing a gun while firing it ... is a crime of violence; possession without firing the weapon is not." *Williams*, 892 F.2d at 304.

The Tenth Circuit in *United States v. Walker*, 930 F.2d 789 (10th Cir.1991), has implied that possession of a weapon is not a crime of violence. It did so in two ways. First, the court noted that it did not agree with the Ninth Circuit's rationale in *O'Neal* that a conviction for felon in possession of a firearm *by its nature* was a crime of violence. *Id.* at 795. Second, the Tenth Circuit noted some conduct of the defendant in that case could not be construed as a crime of violence. *Id.* The events giving rise to one of the charges of felon in pos-

session were that upon seeing police officers approaching, the defendant attempted to hide his weapon. The court noted that the defendant "in no way attempted to use the weapon to prevent his arrest." *Id.* at 791. In the Tenth Circuit's view those facts—which were basically nothing more than simple possession—did not constitute a crime of violence.

Finally, another district court in this circuit has given its opinion on the issue. In *United States v. Nichols*, 740 F.Supp. 1332, 1335 (N.D.Ill.1990), the district court decided that because the defendant in no way attempted to use the firearm he possessed, his conviction under 18 U.S.C. § 922(g)(1) was not for a crime of violence.

District courts, as do we, consider the facts underlying the prior convictions to determine whether they were crimes of violence. U.S.S.G. § 4B1.2, comment. (n. 2) ("Other offenses [aside from those listed] are included where ... the conduct set forth in the count of which the defendant was convicted ... by its nature, presented a serious potential risk of physical injury to another."); *United States v. Jones*, 932 F.2d 624 (7th Cir.1991); *United States v. Terry*, 900 F.2d 1039 (7th Cir.1990).

The district court in our case concluded that "carrying a handgun in one's belt in a city while using public transportation has a great potential for serious injury to the public." The government also emphasized the inherent danger of this concealed weapon. While we agree that the potential for a dangerous, violent act is enhanced by the possession of any weapon—brass knuckles, black jacks, knives, chains or handguns—unless the use of the weapon is overtly implied it is not a crime of violence under the Sentencing Guidelines.

In this case Chapple was riding in a Chicago taxi in daylight hours with a handgun tucked in the waistband of his pants. The gun was not displayed or brandished. There is no evidence that even any touching, gesturing or reference to the gun occurred. Notwithstanding the deference we must give the district court in its application of the Guidelines, the threat posed by simple possession of a weapon, without more, does not rise to the level of an act that "by its nature, presented a serious potential risk of physical injury to another." It is a very fine line, however, and gun-toting convicted criminals should not take solace in this decision. The facts here present a most passive case. A prior conviction involving *any* overt action by a defendant pointing a weapon, drawing a weapon, openly displaying a weapon, brandishing a weapon, holding a weapon, gesturing towards a weapon, or any act other than mere passive possession, would cross that line and present a sufficient potential for physical injury to constitute a crime of violence under § 4B1.2(1).

Chapple also argues that the district court erroneously believed it had no authority to depart from the career offender Guidelines sentence. This argument raises the question of whether the district court chose not to depart or whether the court believed it had no authority to do so. *See, e.g., United States v. Franz*, 886 F.2d 973 (7th Cir.1989). However, because we are remanding this case for resentencing, we merely note the issue and do not resolve it.

### III.

For the foregoing reasons, we REMAND this case to the district court with directions to VACATE the sentence imposed and to resentence Phillip Chapple in accordance with this decision.

POSNER, Circuit Judge, dissenting.

A felon, forbidden by law to possess a gun, places a loaded pistol in the waistband of his trousers. Thus accoutered, he goes for a taxi ride in Chicago. The cab driver sees the gun, summons the police, and the felon is arrested. He is later convicted in an Illinois state court of unlawful use of a gun. The question is whether his offense "involves conduct that presents a serious potential risk of physical injury to another." Sentencing Guidelines § 4B1.2(1). If the answer is "yes," the punishment for the felon's later, federal offense must be enhanced. The district judge answered "yes," and under our precedents, as this court acknowledges, we can reverse only if

her answer was clearly erroneous. *United States v. Alvarez*, 914 F.2d 915, 919 (7th Cir.1990). The court assumes that the district judge was right to examine the conduct of the defendant, rather than just the elements of the crime, in deciding whether this provision of the Guidelines has been satisfied. That is the circuit rule, all right, *id.* at 918, and it is defensible when we are dealing with so amorphous an offense as unlawful use of a weapon. But we should recognize that it has been cast into doubt by *Taylor v. United States*, ⸺ U.S. ⸺, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), and that the circuits are divided over it. See *United States v. Cornelius*, 931 F.2d 490, 492–93 (8th Cir.1991); *United States v. John*, 936 F.2d 764 (3d Cir.1991); cf. *United States v. Dunn*, 935 F.2d 1053, 1058–59 (9th Cir.1991). It requires the district court in effect to retry the earlier offense, which can entail a considerable burden on the court as well as an inquiry fraught with uncertainty because of the passage of time.

Having decided (unlike us) to take the categorical approach and thus not look at the facts of the previous offense, the Ninth Circuit has concluded that a felon's mere possession of a gun is, without more, a crime of violence. *United States v. O'Neal*, 910 F.2d 663, 667 (9th Cir.1990). At the other extreme is the Third Circuit's dictum that the unlawful possession of a weapon by a felon is not a crime of violence unless the gun is fired. *United States v. Williams*, 892 F.2d 296, 304 (3d Cir.1989). The first position could be thought to ignore the "serious" in "serious risk of personal injury," the second the difference between risk and actuality.

My brethren treat our case as one of mere possession, and since we do not follow the Ninth Circuit's categorical approach, the result is a reversal of the sentence. But this is not a case of mere possession, for two reasons. First and indisputably, Chapple was carrying the gun on his person, and this is different from and more dangerous than just keeping it in one's home. Second, the gun quite possibly was in public view. The cabbie, after all, saw it. It was thrust into Chapple's waistband, so the handle must have pro-truded. Maybe—though there is no evidence of this—he was wearing a jacket that concealed the handle, but, if so, it couldn't have concealed it very well, since the cab driver saw it. I have trouble imagining a more provocative act than a felon's carrying a loaded gun in public view while traveling on public transportation in a crowded city. He is flaunting his defiance of the law. A quarrel with the taxi driver, a jostle by the crowd, a gesture of fear or anger by an onlooker alarmed or indignant at such a display—any of these incidents might have occurred and led to the gun's being fired and killing or wounding someone.

How likely was this to happen? As a statistical matter, not very; but then even in a stickup the likelihood of the victim's being shot is small. The felon-in-possession laws are premised on a belief that a felon is so much more likely to use a gun for an evil purpose than other people are that he should be punished for bare possession. The Ninth Circuit may be wrong to infer from that premise that bare possession imports a serious potential risk of physical injury, but there is more here, and whether it is enough to change the color of legal litmus is an issue in the first instance for the district judge. If we are to adhere to this circuit's approach of case-by-case assessment and if the concept of *clear* error is to be taken seriously, we could not reverse the decision whichever way the district judge decided.

I have assumed that Chapple's gun was visible to the world. Maybe it was not and only by a fluke did the cabbie see it. If that is crucial—which my colleagues must think it is since they say they would affirm if Chapple had been "openly displaying a weapon"—and if, as they are minded to do, we adhere to the circuit's approach of looking at the facts of the particular case rather than trying to classify every crime as one of violence or not simply on the basis of the statutory elements of the crime, then we should remand for a determination of the gun's visibility. We should not assume that the gun was concealed when, so far as appears, it was not.

Maybe it should not matter whether the gun was concealed or displayed. A con-

cealed weapon, unless carried by a peace officer or by a private citizen authorized to do so for purposes of self-defense, is sinister; carried by a felon on his rounds (rather than just kept at home), it could well be thought to create the serious potential risk of which the Guidelines speak. Display, one might think, would make a difference only if the gun was being pointed, brandished, or otherwise displayed *in a threatening manner;* it is from such display that a readiness actually to fire the gun and therefore a dangerous probability that it will be fired is inferred; peacefully holstered, as it were, the gun might seem more boast than threat. If pressed I would uphold the district court's decision even if I thought the gun had been effectively if not totally concealed, but the case is easier if it was displayed. Granted that a felon who carries a gun with him while traveling in a crowded city is a public menace even if the gun is concealed, its public display may not only contain an element of provocation but also import a greater willingness to fire the gun other than in lawful self-defense; both elements enhance the menace.

We should either affirm outright on the strength of the clear-error doctrine or remand to enable an arguably crucial fact to be ascertained.